UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
    ) **JUDGE RICHARD L. SPEER**
James Dale Stimmel )
    ) Case No. 10-34114
    Debtor(s) )
    )

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 13). The Debtor filed a response, objecting to the dismissal of his case. (Doc. No. 26). A Hearing was then held on the matter. (Doc. No. 22). At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. The Court has now had this opportunity. Based upon a review of the applicable information, as well as the entire record of this case, the Court finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has merit.

## FACTS

The Debtor, James Stimmel, is a divorced, middle-aged man. The Debtor presently lives with his two sons, ages 14 and 18. Both of the Debtor's sons are dependent upon him for their financial support.

On June 14, 2010, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). At the time he filed his petition for bankruptcy relief, the Debtor was employed as production technician with the Ford Motor Company. The Debtor has been with his employer for almost 13 years, and anticipates that he will continue to work in his present occupation for the foreseeable future.

In re: James Stimmel
Case No. 10-34114

From his employment, the Debtor reported that he earns a gross monthly salary of $4,936.53, equating to $59,238.36 annually. From his salary, the Debtor reported that he has $1,250.34 in mandatory, monthly deductions, leaving him with a net monthly income of $3,686.19. The necessary, monthly expenses claimed by the Debtor were comprised of two components: (1) $1,003.51 for taxes and social security; and (2) $246.83 for union dues.

Against his income, the Debtor disclosed that, to support himself and his two dependents, he requires $3,614.75 in necessary, monthly expenses, thus leaving his household budget with a slight surplus of $71.44 per month. As a part of these necessary expenditures, the Debtor included an allocation of $230.00 per month for phone and cable service.

As for his balance sheet, the Debtor disclosed that he has property interests valued at $137,072.99. Of this amount, $72,900.00 constitutes the value assigned to his residence. The Debtor's remaining property consists of personalty. Of significance, the Debtor reported that he has an exempt retirement account with a value of $45,816.31. The Debtor also reported ownership of two automobiles: a 2009 Ford Focus worth $16,000.00; and a 1994 Ford Aerostar worth $1,000.00.

On the other side of the balance sheet, the Debtor set forth that he has liabilities totaling $154,894.89. Of his liabilities, $85,393.00 constitutes secured debt, with the remaining debt, totaling $69,501.89, being unsecured. The secured obligations are held against the Debtor's residence and one of his automobiles, the Ford Focus. For his residence, the Debtor disclosed the existence of three mortgages, totaling $67,957.00. In turn, the Debtor set forth that a lien encumbers his Ford Focus in the amount of $17,436.00.

On July 27, 2010, the United States Trustee brought the action now before the Court, alleging that granting relief to the Debtor would be an abuse for purposes of 11 U.S.C. § 707(b). On September 22, 2010, the Hearing was held on this matter. At the Hearing, the Debtor did not report

In re: James Stimmel
Case No. 10-34114

any serious health concerns, but did disclose that he has a condition which may cause him to again take a medical leave of absence from work.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The Motion of the United States Trustee ("UST") to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). These sections operate together, with § 707(b)(1) first setting forth the foundational mandate, providing that, where the granting of relief under Chapter 7 would be an abuse, the debtor's case is to be dismissed. In the specific language of § 707(b)(1):

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

This provision serves the purpose of preventing debtors from simply walking away from their legal obligations by limiting Chapter 7 relief to only those debtors truly in "need" of such relief. *In re Oot*, 368 B.R. 662, 670 (Bankr. N.D.Ohio 2007).

Sections 707(b)(2) and 707(b)(3) set forth separate methodologies by which a determination of abuse is to be assessed under § 707(b)(1). First, under an objective 'means test' formula prescribed

Page 3

In re: James Stimmel
Case No. 10-34114

by § 707(b)(2), abuse will be presumed to exist when a 'disposable income' threshold is exceeded. In the alternative, § 707(b)(3) requires a court to undertake a subjective assessment of a debtor's financial situation, providing that abuse should be found to be present if it is determined that the debtor filed either their petition in bad faith or when the totality of the circumstances surrounding the debtor's financial situation demonstrate abuse. If either of the methods set forth in § 707(b)(2) or § 707(b)(3) then result in a finding of abuse, the case becomes ripe for dismissal under § 707(b)(1). *In re Longo*, 364 B.R. 161, 164 (Bankr.D.Conn. 2007).

For the two methodologies prescribed in § 707(b) for assessing abuse, the Court, having reviewed the Debtor's financial situation, finds that the dismissal of this case is warranted under § 707(b)(3). In full, this provision provides:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

For purposes of this provision, no allegations were made by the UST that the dismissal of the Debtor's case was warranted on account of "bad faith" as provided in § 707(b)(3)(A) – a position which this Court has no reason to question. However, the position of the UST, that the Debtor's case should be dismissed based on the totality of the Debtor's financial circumstances, as provided in § 707(b)(3)(B), is supported by the weight of the evidence in this case.

Page 4

In re: James Stimmel
Case No. 10-34114

      In bringing this action to dismiss the Debtor's case in accordance with § 707(b)(3)(B), the UST raised one overall ground for its position: "The debtor has the ability to repay his creditors." (Doc. No. 13, at pg. 5). This basis for dismissal is a determinative factor in assessing whether a case should be dismissed for abuse under § 707(b). In *In re Krohn*, the Sixth Circuit Court of Appeals remarked that in enacting § 707(b), "Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor." 886 F.2d 123, 126 (6th Cir.1989). The Court in *In re Krohn*, then went on to hold that "[a]mong the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings." *Id*.

      Debtors seeking the protection of the bankruptcy court, while not expected to live as mendicant monks, are expected to do some belt tightening. *Id.* at 128. The Debtor in this case, although only reporting in his bankruptcy schedules $71.44 in monthly disposable income, acknowledged at the Hearing held on Dismissal that, by economizing his budget, he could pay $250.00 per month toward his unsecured debt. This is more than a *de minimus* amount.

      Assuming that the Debtor was to allocate $250.00 per month to a 60-month Chapter 13 plan of reorganization, which is a frequently utilized indicator when assessing whether a debtor has the ability to repay their debts,[1] the Debtor would be able to pay approximately 22% of his unsecured debt of $69,501.89. Moreover, considerations surrounding the Debtor's financial situation show this to be more a floor than a ceiling. Significantly, over the course of a Chapter 13 plan, some of the Debtor's expenses are likely to diminish.

      To name one, the Debtor's oldest child is 18 years of age. Thus presumably, in the not to distant future, the Debtor's necessary expenses to care for his dependents will decrease as this older

---

[1] *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004) ("One way courts determine a debtor's ability to pay is to evaluate whether there would be sufficient disposable income to fund a Chapter 13 plan.").

Page 5

In re: James Stimmel
Case No. 10-34114

child becomes more financially independent. Similarly, to service the three mortgages encumbering his residence, which total in value 67,957.00, the Debtor presently allocates $1,063.75 per month. However, this allocation, if amortized over 30 years, and even assuming a 10% rate of interest, would sustain a principal mortgage value of $121,215.18. It, therefore, can be assumed that at least one of the mortgages owed by the Debtor is amortized on a short-term basis, and thus would not last over the life of a Chapter 13 plan.

Furthermore, the Debtor's budget, while not extravagant, does appear to have some room for belt-tightening. Standing out, the Debtor allocates $230.00 for phone and cable service, an amount leaving some room for economizing.[2] Other matters bearing on the Debtor's ability to formulate a feasible Chapter 13 plan of reorganization also stand out.

First, in the past the Debtor has received significant tax refunds, most recently receiving a refund of approximately $3,500.00 for the 2009 tax year. Although not guaranteed, the Debtor testified that, based upon a continuing overpayment of his income tax, he expects to receive tax refunds in the future. To the extent this ultimately proves to be true, such funds could be made available to his creditors. As this Court has noted:

> Tax refunds arise as the result of a taxpayer's overpayment of their tax liability. Such funds, thus, belong to the taxpayer. Following this principle, this Court has held that, as applied to § 707(b), tax refunds, although not available on a monthly basis, are a source of income for a debtor; therefore, so long as there is the realistic prospect of similar refunds in the future, tax refunds will be included in a determination of the Debtor's net income for purposes of § 707(b).

---

[2] A large point of contention between the Debtor and the United States Trustee centered on the need/necessity of the Debtor to allocate financial resources for an automobile operated by the Debtor oldest son. The merits of the UST's Motion can and are being decided without the consideration of this issue.

Page 6

In re: James Stimmel
Case No. 10-34114

*In re Blankenship*, 398 B.R. 457, 462 (Bankr. N.D.Ohio 2008), *citing In re Gonzalez*, 378 B.R. 168, 175-76 (Bankr. N.D.Ohio 2007).

Second, the Debtor disclosed at the Hearing that his monthly union dues are only $56.00 per month, not $246.83 as originally disclosed in his schedules, thereby increasing the amount of discretionary income available to the Debtor. Also, the Debtor, who is not nearing retirement, has $45,816.31 in a retirement account. *In re Briggs*, Slip Copy, 2010 WL 4272585 (Bankr. N.D.Ohio 2010). (a debtor's exempt property may be considered when assessing whether to dismiss a case under § 707(b)). Finally, a couple of indica, which do not directly look to a debtor's ability to pay, but which the Sixth Circuit Court of Appeals has held are relevant under § 707(b), bend toward dismissal.

In *In re Krohn*, the Sixth Circuit set forth that in determining whether to dismiss a case under § 707(b), a bankruptcy court, in addition to a debtor's ability to pay, should consider matters such as whether the debtor "was forced into Chapter 7 by unforeseen or catastrophic events"; and "whether the debtor enjoys a stable source of future income." 886 F.2d 123, 126 (6th Cir. 1989). For the first of these considerations, no sudden event was brought to light which precipitated the need for the Debtor to file for bankruptcy relief. Rather, the picture presented to the Court is one of a slow decline in the Debtor's financial situation brought on by the continuous accumulation of consumer credit. For the second consideration, the Debtor fully acknowledged that, insofar as today's job market will allow, his employment is stable, thereby providing him with a stable source of income.

In seeking to maintain his Chapter 7 case, the Debtor stressed that he may again need to go on medical leave which would negatively impact his income. However, even assuming that such a contingency comes to pass, this Court has stressed that "Chapter 13 plans of reorganization are sufficiently malleable to handle such contingencies." *In re Jordan*, 428 B.R. 430, 437 (Bankr.

Page 7

In re: James Stimmel
Case No. 10-34114

N.D.Ohio 2010). In this regard, any medical absence from work needed by the Debtor would likely be temporary, as nothing indicates that the Debtor's overall health is impaired.

Therefore, given that the Debtor, albeit with some adjustments, has within his means an ability to repay some of his creditors, and given that no circumstances mitigate against dismissal, the Court finds that the Motion of the United States to Dismiss under § 707(b)(1) and § 707(b)(3) has merit. As such, unless the Debtor voluntarily converts his case, the Court is bound to promptly enter an order of dismissal pursuant to § 707(b)(1). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

***IT IS FURTHER ORDERED*** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on, Friday, December 10, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: November 23, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 23rd day of November 2010 to:

Cynthia A Jeffrey
2450 Edison Blvd
Twinsburg, OH 44087

Bruce C French
PO Box 839
Lima, OH 45802-0839

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131

James Dale Stimmel
1957 Burch Ave.
Lima, OH 45801

Randy Lee Reeves
973 W North St
Lima, OH 45805

Dean Wyman ust03
201 Superior Aveneue, Suite 441
Cleveland, Oh 44114-1240

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court